UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 1:24-cr-10320-IT |
| v. | ) | |
| | ) | *Leave to File Redacted Version* |
| JUSTIN DAVID GAGLIO | ) | *Granted 10/20/2025* |
| | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Justin David Gaglio has admitted guilt and accepted responsibility for his unlawful act – Threats in Interstate Commerce, in violation of 18 USC § 845(c) – and he now seeks to accept punishment for his crimes. Mr. Gaglio, a veteran, has long suffered from mental health issues and polysubstance abuse disorder. As a result of this arrest, he began receiving appropriate medication and is now under the care of a team of doctors and case managers that have transformed his life. He is now stable and healthy, and unlikely to reoffend. We submit, that a sentence of **time served followed by 36 months of supervised release** is sufficient, but not greater than necessary to satisfy the statutory aims of 18 U.S.C. § 3553(a).

## I.    BACKGROUND, HISTORY, AND CURRENT CIRCUMSTANCES

### *Mental Health and Substance Abuse: Past & Present*

Justin David Gaglio has a long and complicated mental health history. He has been hospitalized repeatedly throughout his life. Over the past fifteen years he has received a variety of diagnoses - at different times he was diagnosed with ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ . He has also struggled for

many years with polysubstance abuse disorder.

However, over the past year, Mr. Gaglio has done remarkably well in sobriety, and on his injectable medication and treatment regimen. He and his providers have finally found the right combination of medication and services that work for Mr. Gaglio. He dutifully engages with his treatment providers and demonstrates great initiative in achieving goals. He has maintained sobriety, successfully complied with medication maintenance, and is progressing in therapy. He obtained stable housing and manages a monthly budget. Mr. Gaglio loves sobriety and is proud of reaching one year clean and sober. His success over the past year can be attributed to his commitment to his well-being and his family, as well as the care he receives from his team of providers.

Mr. Gaglio is heavily service connected. His team provides ample support and accountability. His treatment and probation schedules are as follows:

1. Lynn Community Health Center, Outpatient Psychiatry - Dr. Timothy Shea: Monthly

2. Department of Mental Health, Case Management - Derick Jenkins, LICSW: Monthly

3. Spectrum Health, Telehealth Counseling - Danielle Makosky: Monthly

4. U.S. Probation: USPO Michael Foreman - Monthly home visits, weekly phone calls

5. Lynn Community Health Center: ▮▮▮▮▮▮▮▮▮▮▮ Bi-Weekly

6. Lynn Community Health Center, Liana Van de Water, LMHC: Weekly

Mr. Gaglio has been enrolled with Department of Mental Health (DMH) case management since January of 2025. Mr. Gaglio's case manager, social worker Derick Jenkins, reports that Mr. Gaglio is in total compliance with all his appointments and medications. Mr. Jenkins observes that "During this time, he has consistently attended his appointments, actively participated in his goals, and demonstrated meaningful progress in treatment." Exhibit 1, Letter from Department of

2

Mental Health. Mr. Jenkins states to counsel that Mr. Gaglio is very organized, and that he was impressed by how Mr. Gaglio took initiative and did "all the footwork" required to get his housing. Mr. Jenkins is grateful that Mr. Gaglio has his own home, which he describes as a vast improvement from the rooming house that Mr. Gaglio was living in prior to moving into his apartment. He describes Mr. Gaglio as "self-reflective" and notes that Mr. Gaglio recently celebrated a year of sobriety.

Mr. Gaglio's doctor, Dr. Timothy Shea, reports to counsel that Mr. Gaglio is doing well on medication. He believes he is being appropriately treated with the injectable medication, and that his symptoms are properly managed in the community.

Mr. Gaglio's therapist, Liana Van de Water, states to counsel that Mr. Gaglio is consistent with therapy, seeing her weekly and working together towards his progress. He is focused on "rehabilitating himself" and is "goal oriented". She believes he is stable.

Finally, Mr. Gaglio's mother, Susan Arzillo, also describes seeing clear differences in her son. She said that on the medication he has an overall positive outlook. She states to counsel, "He's happy now."

### Housing: From Instability to Security

For four long years Justin Gaglio waited for his own apartment. He spent two years living in a homeless shelter, and another two years in a rooming house on Essex Street. With the help of the Department of Mental Health, Mr. Gaglio went through the process of applying for housing upon his release from incarceration on this case. Then, in May, he was finally able to move into the apartment where he now resides. He loves his home; it is his sanctuary. There is no way to overstate the importance of Mr. Gaglio's current housing situation. Having his own place, in a calm and safe neighborhood, means the world to him. It gives him the structure and

stability to manage his mental health, his substance abuse disorder, and to spend time with his family.

It is highly important to Mr. Gaglio's continued rehabilitation to have Mr. Gaglio in safe and stable housing. Security in housing keeps people connected to mental health care and substance abuse treatment, and incarceration would disrupt that stability. [1] Based on the nature of his housing, Mr. Gaglio would not be able to return to his apartment if he were to serve any future period of incarceration. If he goes to jail, Mr. Gaglio will end up back in the shelter system. If he returns to the shelter, he runs the risk of losing the stability he has in the community, which he has worked so hard to achieve.

*Family History*

Mr. Gaglio is a devoted son who enjoys an extremely close relationship with his mother. "We love each other very much and I am very proud of Justin and what he has accomplished." Exhibit 2, Letter of Support, Susan Arzillo. Of their relationship, she notes to counsel, "He and I have a very special bond. Much stronger than normal mother and son bond. We love spending time together." Every weekend, her husband drops her off at Mr. Gaglio's apartment and they spend the day together. She describes how Mr. Gaglio makes her lunch, and they sit and talk for hours. They are both incredibly comfortable in each other's presence, and Susan describes how Mr. Gaglio "is so happy now. He wasn't smiling prior to this." She credits the change to his sobriety, compliance with medication, and safe and stable housing. His family is overjoyed that they have a place to visit him that is safe and calm. She is exceedingly proud of the progress and

---

[1] "Lack of stable housing complicates reentry for people leaving prisons or jails and can increase the risk of recidivism. Without a stable place to live, people leaving prison or jail have difficulty staying connected to mental health or substance addiction treatment or complying with terms of supervision." The Council of State Governments Justice Center, 50-State Report on Public Safety: Action Item 4: Reduce Barriers to Housing, https://50statespublicsafety.us/part2/strategy-4/action-item-4/ (last visited Oct. 20, 2025).

4

improvement that Mr. Gaglio has made over the past year. Susan is overjoyed that "he's turned his life around."

Mr. Gaglio is also a father. He adores his son, Jason. Together, they are repairing a relationship that was historically rocky due to Mr. Gaglio's mental health and substance abuse issues but is now on the right path. They spend time together and have a loving relationship; each of Mr. Gaglio's providers mentioned their bond and how important it is to Mr. Gaglio. He wants to be available for Jason to help him pursue his goals. Jason reports to US Probation that Mr. Gaglio's current medication has "truly improved his father's state of mind."

## NATURE AND CIRCUMSTANCES OF OFFENSE

Mr. Gaglio pled guilty to Threats in Interstate Commerce, in violation of 18 USC § 845(c). He pled guilty to sending at least one threatening message to the victim in this matter. In addition to the message at issue, Mr. Gaglio sent other messages along the same vein to other officials.

Mr. Gaglio is ashamed of the messages he sent. He deeply regrets that he ever caused pain to the recipients, fully recognizes how frightening and disturbing the messages were. He is horrified by his own prior behavior.

Mr. Gaglio is not violent. His family describes him as kind and gentle. He is a deeply devoted father who talks about his son constantly. He is himself an incredibly caring and attentive son. Mr. Gaglio explains in his letter to the Court, the crime for which he comes before this Court is not consistent with his character. Exhibit 3, Justin Gaglio Letter to Court.  The person he wants to be, and the person he has demonstrated he can be over the past year, is completely different than the person who committed this crime. As Mr. Gaglio writes, "If I could I would take it back." Exhibit 3.

5

## SENTENCING GUIDELINES CALCULATIONS

While the Court is required to compute the Guideline Sentencing Range as a "starting point and the initial benchmark," the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the courts to apply in section 3553(a). The Court "may not presume that the Guidelines range is reasonable" and must "make an individualized assessment based on the facts presented." See Gall v. United States, 552 U.S. 38, 49-50 (2007).

We submit that Probation's calculations of the Guidelines are correct: Mr. Gaglio is at a base offense level 12 pursuant to USSG §2A6.1(a)(1). His offense level is increased by 2 levels pursuant to USSG §2A6.1(b)(2). His offense level is further increased by 6 levels pursuant to USSG § 3A1.2(b). His offense level is reduced by three levels USSG §3E1.1. Therefore, his total adjusted offense level is 17. With a criminal history score of II, his total guideline range is 27-33 months.

## THE PROPOSED SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO ACHIEVE THE SENTENCING GOALS OF 18 U.S.C. § 3553(a).

As the First Circuit stressed, the determination of a just and adequate sentence requires a "more holistic inquiry" than simply plugging numbers into a guidelines calculation, and "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008) (citing Kimbrough v. United States, 552 U.S. 85, 101 (2007)). That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Id*.

Often, formulating a just sentence requires determining *how much* incarceration might serve to deter future criminal conduct. A sentence with an intensive supervision component after a minimally sufficient term of imprisonment better serves the correctional goal for Mr. Gaglio while still providing substantial and just punishment. The two months Mr. Gaglio spent in jail has sufficiently deterred him from future criminal activity, as evidenced by the progress he has made in his life over the past year he has been released on condition. The arrest and time he spent in jail communicated to him clearly that not only can he not commit future crimes, but also that he must maintain compliance with his mental health and substance abuse treatment. The terms and conditions of supervised release – much like the terms of his pretrial release – are exactly what will determine his success in the future.

### *Similar Cases: 18 U.S.C. § 3553(a)(6)*

The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct is codified in 18 U.S.C. § 3553(a)(6). Judges in this district, appreciating that a defendant's psychological and emotional conditions often warrant a downward departure, have repeatedly sentenced defendants with serious psychiatric and mental health conditions to terms of probation for similar offense conduct.

For example, in *United States. v. Macleod,*[2] Dkt. No. 1:19-cr-10089-PBS, the defendant pled guilty to two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c) and two counts of conveying false information related to purported biological weapons in violation of 18 U.S.C. § 1038(a)(1)(A), after having sent multiple separate mailings to the headquarters of OKCupid. The defendant sent a series of nine threatening letters and mailings over the course of more than 12 weeks to the CEO of an online dating website. In the various

---

[2] Defendant Macleod was in criminal history category I with a total offense level of 12 and a guideline sentencing range of 10-16 months incarceration. [Government Sentencing memorandum, D.E. 46].

threatening letters, Mr. Macleod included white powder (claiming it to be anthrax)[3] that spilled out of the envelope when opened. In another, the defendant placed a piece of paper stained with a red substance that appeared to be blood, and in a subsequent threatening mailing, the defendant identified the substance as blood infected with the AIDs virus. Mr. Macleod, who suffered from PTSD, alcoholism, and other mental illness, was sentenced by the Court to 24 months of probation, with the first two months in a Residential Re-Entry Center and the following 8 months in home detention in a sober home with location monitoring.[4]

The sentence imposed in *United States v. Linder*, Dkt. 1:22-cr-10354-WGY, offers further support for Mr. Gaglio's request for a sentence of supervision as "sufficient but not greater than necessary" to achieve the purposes of sentencing under 18 U.S.C. § 3553(a). *Linder* involved the prosecution of an out-of-state defendant, who, as a result of the spread of August 2022 disinformation falsely claiming health care providers were forcing hysterectomies and gender affirmation surgery on patients under 18 years of age, made a threatening call to a health care provider in Massachusetts. Linder targeted a specific doctor at The National LGBTQIA+ Center, threatening them first in a voicemail,[5] and then continuing to attempt contact by placing multiple additional calls to Rhode Island University where the doctor taught and placing a further call to the doctor's former medical practice.[6] Mr. Linder pled guilty to one count of 18 U.S.C. § 875(c) and, pursuant to the parties plea agreement, was sentenced to 3 months of incarceration and 36 months of supervised release.[7] Unlike Mr. Gaglio, Linder did not suffer from mental

---

[3] In this threat, the defendant included the "harrowing" message "Welcome to the wonderful world of ANTHRAX". [Government Sentencing memorandum, D.E. 46].
[4] *U.S. v. Macleod* Judgment, pp. 1, 4. [D.E. 52].
[5] Linder's threat to the victim doctor stated: "You sick motherfuckers, you're all gonna burn. There's a group of people on their way to handle [Victim 1]. You signed your own warrant, lady. Castrating our children. You've woken up enough people. And upset enough of us. And you signed your own ticket. Sleep well, you fuckin' cunt." *U.S. v. Linder*, Government Sentencing Memorandum, p. 2. [D.E. 63]
[6] *U.S. v. Linder*, Government Sentencing Memorandum, p. 2. [D.E. 63].
[7] Linder Plea Agreement, p. 3. [D.E. 56].

illness, but was, instead, a high-functioning, college-educated father of two, with a full-time career in a family owned business, who enjoyed a stable and, by all indications, privileged, existence in a small Texas town (originally founded by members of Linder's family).[8] In stark contrast, Mr. Gaglio's decision to send the messages he sent was unfortunately a result of his mental illness and substance abuse disorder, and is fundamentally dissimilar to the circumstances surrounding Linder's fully coherent, fully functional, rational state-of-mind at the time of his multiple calls to the doctor he targeted.

### Mental Health Care: 18 U.S.C. § 3553(a)(2)(D)

For Mr. Gaglio, an incarceratory sentence would run counter to the directive set forth at 18 U.S.C. § 3553(a)(2)(D), which requires the court to consider a defendant's need for medical care when fashioning a just sentence. Mr. Gaglio is receiving excellent care in the community, which has led to his stability and continued rehabilitation.

It is an unfortunate reality that many people who suffer from mental health and substance abuse issues are incarcerated rather than in the community receiving necessary care. The mentally ill population is over-represented in prisons: "About two in five people who are incarcerated have a history of mental illness (37% in state and federal prisons and 44% held in local jails). This is twice the prevalence of mental illness within the overall adult population."[9]  Mr. Gaglio doesn't have to be one of those people. Prior to this arrest, Mr. Gaglio was caught in a cycle of mental health issues and drug abuse. The arrest served as a resounding wake-up call for Mr. Gaglio who is now on the right path. So much of that is due to the support he has, and to his own efforts in achieving his goals and maintaining mental health stability.

---

[8] *U.S. v. Linder*, Defense Sentencing Memorandum, p. 2 [D.E. 62].
[9] National Alliance on Mental Illness, Mental Health Treatment While Incarcerated (Apr. 8, 2021), https://www.nami.org/advocacy/policy-priorities/improving-health/mental-health-treatment-while-incarcerated/.

Undoubtedly, if sent to prison, Mr. Gaglio will suffer drastic mental health consequences. Medical care in the BOP is chronically understaffed.[10] This would be particularly tragic for Mr. Gaglio, who has made great strides in the community. So much of his improvement and well-being is tied to the fact that he is currently surrounded by high quality mental health care, the support of his family, and the safety and security of his own apartment.

### CONCLUSION

For the foregoing reasons, Justin Gaglio respectfully asks the Court to impose a sentence of time served followed by 36 months of supervised release. This will provide punishment that is sufficient, but no greater than necessary, to achieve the statutory purposes of sentencing in this case. See 18 U.S.C. § 3553(a).

Respectfully submitted,
JUSTIN DAVID GAGLIO
By His Attorney:

/s/ Eliza Jimenez
Eliza Jimenez
NY Bar #: 510869
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA 02210
Tel: 617-223-8061

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 20, 2025.

---

[10] The Office of Inspector General found that "recruitment of medical professionals is one of the BOP's greatest challenges and staffing shortages limit inmate access to medical care, result in an increased need to send inmates outside the institution for medical care, and contribute to increases in medical costs." U.S. Dept. of Justice, Office of Inspector General, Review of the Federal Bureau of Prisons' Medical Staffing Challenges (2016), https://oig.justice.gov/reports/2016/e1602.pdf.

*/s/ Eliza Jimenez*
Eliza Jimenez